******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE JACQUELYN W.*
(AC 39013)

Beach, Prescott and Bishop, Js.

*Argued September 8—officially released October 27, 2016***

(Appeal from Superior Court, judicial district of
Hartford, Juvenile Matters, Frazzini, J. [neglect
judgment]; Burgdorff, J. [motion for order of
commitment]; Hon. Robert G. Gilligan, judge trial
referee [motion to transfer permanent guardianship;
articulation].)

*Karen Oliver Damboise*, for the appellant (respondent mother).

*Carolyn A. Signorelli*, assistant attorney general,
with whom, on the brief, were *George Jepsen*, attorney
general, *Gregory T. D'Auria*, solicitor general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

BEACH, J. The respondent mother, Wendy F., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, granting a motion to transfer permanent legal guardianship of the respondent's minor daughter, Jacquelyn W., to Jacquelyn's aunt, Shirley R. The respondent claims that the court improperly granted the petitioner's motion for permanent transfer of guardianship because the court failed (1) to canvass her prior to the hearing in accordance with *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015); and (2) to advise her that the court could draw an adverse inference from her failure to testify. We disagree and affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. Jacquelyn was born in 2005. In 2012, the court adjudicated Jacquelyn neglected and ordered six months protective supervision by the Department of Children and Families (department). Six months later, the court granted the petitioner's motion to commit Jacquelyn to the department's care and custody. From September, 2013, until June, 2015, Jacquelyn resided with her paternal aunt, Shirley R. Jacquelyn developed a strong relationship with Shirley. She referred to Shirley as "Auntie," and had her own room in Shirley's apartment. While living with Shirley, Jacquelyn continued to have regular visits and contact with her mother. Jacquelyn expressed a desire to maintain her relationship with her mother, but to continue to reside with Shirley. On June 1, 2015, the petitioner moved to transfer and to vest permanent legal guardianship of Jacquelyn in Shirley. The respondent mother objected to the motion.

The court, *Hon. Robert G. Gilligan*, judge trial referee, conducted a hearing on the motion on January 25, 2016. The respondent was represented by counsel at this hearing, but did not testify. On February 9, 2016, the court granted the petitioner's motion for a permanent transfer of legal guardianship. The court determined that, pursuant to General Statutes § 46b-129 (j) (6), the department had established by clear and convincing evidence that (1) a ground for termination of parental rights existed—that is, that the respondent had been provided with specific steps to take to facilitate Jacquelyn's return, and had failed to achieve the degree of personal rehabilitation as would encourage the belief that, within a reasonable time, the respondent could assume a responsible position in Jacquelyn's life; (2) adoption was not appropriate in this case; (3) Shirley, the proposed legal guardian, was Jacquelyn's relative; (4) Jacquelyn had resided with Shirley for at least one year; (5) Shirley was a suitable and worthy guardian; and (6) the transfer of permanent legal guardianship of Jacquelyn to her aunt was in Jacquelyn's best interest.

This appeal followed.

## I

Prior to trial, the court did not provide the respondent with the *In re Yasiel R.* canvass, nor was it requested to do so. The respondent argues that the court's failure to provide a pretrial canvass constituted plain error, and that this court should invoke its supervisory authority to expand the canvass requirement to apply to hearings regarding the permanent transfer of guardianship. We disagree.

In *In re Yasiel R.*, supra, 317 Conn. 773, our Supreme Court held that parents must be canvassed prior to any trial for termination of parental rights. Id., 793–94. As part of that canvass, the court must explain the trial process, the parent's rights during trial, and the potential consequences of an adverse determination in the proceeding. Id., 794.

The respondent's claim regarding the canvass was not preserved at trial. *In re Yasiel R.* had been published shortly before trial in this case; the parties, then, had the ability to invoke *In re Yasiel R.* and to request a canvass, but did not do so. In these circumstances, reversal would constitute an ambuscade of the trial court; see *Remillard* v. *Remillard*, 297 Conn. 345, 352, 999 A.2d 713 (2010); and we would not reach the merits of the issue unless application of another doctrine were to except this case from the requirement of preservation.

The court's holding in *In re Yasiel R.* pertained to a trial concerning the termination of parental rights; accordingly, the fact that the respondent here was not canvassed prior to the hearing regarding a permanent transfer of legal guardianship does not constitute plain error. The plain error doctrine[1] is not available because the *In re Yasiel R.* canvass requirement has not been extended to require a canvass in the context of this case; without a requirement to canvass, there is no error.

Additionally, our Supreme Court held in *In re Yasiel R.* that the canvass was not constitutionally required; *In re Yasiel R.*, supra, 317 Conn. 787; and, therefore, the claimed error is not of constitutional dimension. Accordingly, the issue is not reviewable under *Golding.*[2] The only other possible avenue for review of the unpreserved claim is the invocation of our supervisory authority.

The respondent argues that this court should exercise its supervisory authority to extend the holding of *In re Yasiel R.* to proceedings regarding permanent transfers of legal guardianship. The respondent argues that such expansion is appropriate in this case because permanent transfers of guardianship are sufficiently similar to terminations of parental rights to warrant a similar canvass. *In re Yasiel R.* held that, with respect to terminations of parental rights, the use of the court's supervi-

sory authority was justified by the appearance of "unfairness" and "lack of concern over a parent's rights" that results from a transfer of guardianship without a pretrial canvass. *In re Yasiel R.*, supra, 317 Conn. 794. The respondent suggests that the same considerations compel a similar exercise of supervisory authority in this case.

In response, the petitioner asserts that the use of supervisory authority to expand the *In re Yasiel R.* canvass requirement is not appropriate. First, the petitioner argues that our Supreme Court limited the canvass requirement to termination of parental rights hearings, and that this court should not construe *In re Yasiel R.* more broadly than it was intended. The petitioner points out that the use of a court's supervisory powers "is an extraordinary remedy" to be invoked only when the issue at hand is "of utmost seriousness"; (internal quotation marks omitted) id., 789–90; and that the consequences following a permanent transfer of guardianship do not justify the imposition of such an extreme remedy. In that vein, the petitioner argues that a permanent transfer of guardianship does not qualify as an "exceptional circumstance" warranting the use of our supervisory powers. We agree with the petitioner.

"It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice." (Internal quotation marks omitted.) *In re Yasiel R.*, supra, 317 Conn. 789. "The exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) Id., 790. Three criteria must be met in order for this court to consider exercising its supervisory authority: (1) the record must be adequate for review; (2) all parties must be afforded an opportunity to be heard on the issue; and (3) review of an unpreserved claim must not prejudice a party. Id. "If these three threshold considerations are satisfied, the reviewing court next considers whether one of the following three circumstances exists: (1) the parties do not object; (2) the party that would benefit from the application of this court's supervisory powers cannot prevail; or (3) a claim of exceptional circumstances is presented that justifies deviation from the general rule that unpreserved claims will not be reviewed." Id.

We decline to exercise our supervisory authority to expand the *In re Yasiel R.* ruling to permanent transfers of guardianship. Although the threshold considerations for exercising our supervisory authority may well be met, the circumstances of this case do not satisfy the second set of requirements: the circumstances are not

exceptional to the degree necessary to justify exercising our supervisory authority.

In *In re Yasiel R.*, our Supreme Court recognized that "the lack of a canvass of all parents in a parental rights termination trial may give the appearance of unfairness"; id., 793–94; and that "public confidence in the integrity of the judicial system would be enhanced by a rule requiring a brief canvass of all parents immediately before a parental rights termination trial . . . ." Id., 794. In deciding that the use of its supervisory authority was appropriate, the court considered the core rights at stake during a termination of parental rights trial, including "fundamental parental rights and right to family integrity . . . ." Id., 792. Although a parent's rights are affected by a permanent transfer of guardianship, the consequences of a permanent transfer are not as severe as a complete termination of a parent's rights. In this case, for example, it was expected that the respondent mother would continue to have regular visits and contact with her daughter, even after the transfer of guardianship. Jacquelyn resides with a relative, but she has expressed the desire to continue her relationship with the respondent. Although the transfer of guardianship is by no means insignificant, it is not as drastic a deprivation as a termination of parental rights, and we decline to exercise our supervisory authority to require a pretrial canvass beyond that which *In re Yasiel R.* requires.[3]

## II

The respondent next claims that the court erred by drawing an adverse inference from her failure to testify at trial without first advising her that such an inference could be made. Because the record does not reflect that the court drew such an inference, we disagree with the respondent's claim.

In support of her claim that the court drew an adverse inference from her failure to testify, the respondent relies on one sentence in the trial court's memorandum of decision: "The court was presented with no evidence of any progress by [the respondent] despite having more than ample time to encourage the belief that she could assume a responsible position in the life of Jacquelyn." The respondent argues that, in accordance with our Supreme Court's decision in *In re Samantha C.*, 268 Conn. 614, 847 A.2d 883 (2004), the court erred in drawing an adverse inference from the respondent's silence without first warning her that such an inference could be taken.

The petitioner responds that the court did not draw an adverse inference from the respondent's silence, and, therefore, there was no error in not warning the respondent that an adverse inference could be drawn from her failure to testify. The petitioner argues that, on a reading of the trial court's decision as a whole, it is clear

that the court's statement was merely "an appropriate observation about the evidentiary record," and not an adverse inference taken from the respondent's silence. Furthermore, the petitioner points out that the court later articulated that it had not drawn an adverse inference from the respondent's failure to testify. The petitioner argues that the court's articulation requires the conclusion that no adverse inference was drawn in this case. We agree with the petitioner.

"We begin our analysis of the respondent's claim by noting that the question of whether the court drew an adverse inference in the present case requires us to interpret the court's memorandum of decision. The construction of a judgment is a question of law for the court, such that our review of the defendant's claim is plenary. As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment." (Internal quotation marks omitted.) *In re Jason B.*, 137 Conn. App. 408, 414, 48 A.3d 676 (2012).

In 2004, our Supreme Court held that "a trier of fact generally may draw an adverse inference against a party for its failure to rebut evidence"; *In re Samantha C.*, supra, 268 Conn. 637; but "respondents [are] entitled to be notified by the court of the prospect that an adverse inference might be drawn from their silence." Id., 666; see also Practice Book § 35a-7A. If the court is not inclined to draw an adverse inference against a respondent, such warning is not required. *In re Lukas K.*, 120 Conn. App. 465, 475 n.4, 992 A.2d 1142 (2010), aff'd, 300 Conn. 463, 14 A.3d 990 (2011).

The respondent argues that the court's statement that it "was presented with no evidence of any progress by [the respondent]" reveals that the court drew an adverse inference against the respondent. Even if this statement in a vacuum could be construed as ambiguous, it does not suggest that any such inference was drawn. The trial court specifically stated that its decision was "[b]ased on the testimonial and documentary evidence admitted," including the department's social study and case status report, as well as testimony from Shirley and from Jacquelyn's social worker. The court noted that the department's social study "document[ed] the multiple services offered to [the respondent] to address her substance abuse, mental health and parenting issues . . . [and her] failure to engage and comply with, or fully benefit from, the programs and services offered or provided, which resulted in [her] leaving or being unsuccessfully discharged from the services . . . ." As stated in the context of another case, "[w]hen read in light of these statements, it is clear that the evidence submitted by the petitioner . . . was found by the court to be both credible and wholly uncontested by the respondent." *In re Jason B.*, supra, 137 Conn. App.

415–16. The sentence at issue simply states that there was no evidence of progress.

Moreover, at the petitioner's request, the trial court issued an articulation confirming that "[t]he court did not draw any adverse inference from the respondent mother's failure to testify, and such failure was not given any consideration in ruling on the matter." The respondent argues that, despite the court's statements in its articulation, its first decision reveals that an adverse inference was drawn. The respondent dismisses the court's articulation too easily. "In the interest of judicial economy and proper presentation of the issues on appeal, this court has repeatedly . . . relied on those articulations to resolve the issues on appeal." *In re Nevaeh W.*, 317 Conn. 723, 738, 120 A.3d 1177 (2015). We conclude that we have no reason to doubt the veracity of the court's articulation, which establishes that the trial court did not draw an adverse inference against the respondent for failing to testify.

The judgment is affirmed.

In this opinion the other judges concurred.

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

\*\* October 27, 2016, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005). We perceive no manifest injustice from the record in this case.

[2] See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989) ("a defendant can prevail on a claim of constitutional error not preserved at trial only if . . . (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial," as modified by *In re Yasiel R.*, supra, 317 Conn. 781).

[3] We note as well that there is nothing in the record to suggest that anything different would have occurred at trial had the suggested canvass been given or that the respondent suffered any actual harm as a result of the absence of such a canvass.