******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TIMOTHY TOWNSEND *v.* COMMISSIONER OF CORRECTION
## (AC 44158)

Moll, Cradle and Westbrook, Js.

*Syllabus*

Pursuant to statute (§ 54-280a (a) (1)), any individual who has been convicted of an offense committed with a deadly weapon and is released into the community on or after January 1, 2014, shall, following such release, register with the Commissioner of Emergency Services and Public Protection.

Pursuant further to statute (§ 54-280a (a) (2)), prior to accepting a plea of guilty from a person with respect to an offense committed with a deadly weapon, the court shall inform the person that he will be subject to the registration requirement of § 54-280a (a) (1) and understands the consequences of the plea.

The petitioner sought a writ of habeas corpus, claiming his plea of guilty to the charge of murder, under the *Alford* doctrine, was obtained in violation of his due process rights under the state and federal constitutions because he was not canvassed about the requirement that he register, pursuant to § 54-280a, as an offender on the Deadly Weapon Offender Registry (DWOR) upon his release. The petitioner was not canvassed for the DWOR requirement because he was convicted in 2002, and the legislature enacted § 54-280a in 2013. The respondent, the Commissioner of Correction, admitted in his return the petitioner's claim that he would be subject to the registration requirement of § 54-280a upon his release. The habeas court, in denying the petition, found that the failure to advise the petitioner of a collateral consequence that did not exist at the time he entered his plea did not violate his due process rights. On appeal to this court, the petitioner raised the unpreserved claim that he was not required to register as a deadly weapon offender because § 54-280a did not apply to him in connection with his 2002 conviction for murder and sought a judgment declaring that he was not subject to registration on the DWOR on the basis of his underlying conviction. Subsequently, the respondent, despite admitting the petitioner's allegation that he would have to register on the DWOR upon release, deferred to the position of the Department of Emergency Services and Public Protection (department), the agency tasked with establishing and maintaining the DWOR, which was that § 54-280a did not apply to the petitioner. The respondent claimed that the petitioner's appeal was not ripe because he would not likely have to register and that the petition should be remanded to the habeas court and dismissed on ripeness grounds. *Held*:

1. The petitioner's claim was ripe for review: there was a substantial question as to whether § 54-280a applied to the petitioner's 2002 conviction, and that determination would result in practical relief to the petitioner and guide the present conduct of the parties; moreover, the adversity of the parties' interests at the time of the amended petition and return evidenced a justiciable controversy, which has not been rendered moot by the current position of the respondent that § 54-280a did not apply to the petitioner.

2. This court, exercising its supervisory authority to review the petitioner's unpreserved claim, concluded that the habeas court improperly denied the habeas petition because the entire premise of the habeas court's decision, that § 54-280a was applicable to the petitioner's 2002 conviction, was incorrect: the plain and unambiguous text of § 54-280a expressly limits the registration requirement set forth therein to offenders of eligible crimes who are both convicted of an offense committed with a deadly weapon and released into the community on or after January 1, 2014; moreover, the question of whether the phrase "on or after January 1, 2014," applied to the petitioner's date of conviction or only to the petitioner's date of release, was resolved by reference to the requirement in § 54-280a (a) (2) that a court, prior to accepting a plea of guilty to an eligible charge, canvass a criminal defendant about the registration requirement of § 54-280a, and it necessarily followed that § 54-280a (a) (2) would be rendered meaningless in the context of an otherwise eligible conviction rendered prior to January 1, 2014; furthermore, this interpretation of § 54-280a was consistent with the department's interpretation of the statute, as represented to this court through the respondent's counsel, and its conclusion that the registration requirement of § 54-280a did not apply to the petitioner in relation to his 2002 conviction, a representation that the habeas court did not have the benefit of in making its determination; accordingly, the petitioner was entitled to the reversal of the habeas court's judgment.

Argued January 11—officially released June 18, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Bhatt, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Reversed*; *judgment directed*.

*Timothy Townsend*, self-represented, the appellant (petitioner).

*Brett R. Aiello*, assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, and *Sean McGuinness*, assistant state's attorney, for the appellee (respondent).

*Opinion*

MOLL, J. The self-represented petitioner, Timothy Townsend, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus, in which he claimed that the retroactive application of the Deadly Weapon Offender Registry (DWOR) requirement of General Statutes § 54-280a[1] to him renders his underlying guilty plea involuntary. On appeal, the petitioner raises for the first time

[1] General Statutes § 54-280a, which the legislature enacted in 2013, provides in relevant part: "(a) (1) Any person who has been convicted . . . of an offense committed with a deadly weapon and is released into the community on or after January 1, 2014, shall, within fourteen calendar days following such release or, if such person is in the custody of the Commissioner of Correction, at such time prior to release as the Commissioner of Correction shall direct, and whether or not such person's place of residence is in this state, register such person's name, identifying factors, criminal history record, residence address and electronic mail address with the Commissioner of Emergency Services and Public Protection, on such forms and in such locations as the Commissioner of Emergency Services and Public Protection shall direct, and shall maintain such registration for five years.

"(2) Prior to accepting a plea of guilty . . . from a person with respect to an offense committed with a deadly weapon, the court shall (A) inform the person that the entry of a finding of guilty after acceptance of the plea will subject the person to the registration requirements of this section, and (B) determine that the person fully understands the consequences of the plea. . . .

"(c) Any person who is subject to registration under this section who violates any provisions of subsection (a) or (b) of this section, except a violation consisting of failure to notify the Commissioner of Emergency Services and Public Protection of a change of name or address, shall be guilty of a class D felony. Any person who is subject to registration under this section who fails to notify the Commissioner of Emergency Services and Public Protection of a change of name or address not later than five business days after such change of name or address shall be guilty of a class D felony."

the precise claim that he is not required to register as a deadly weapon offender because § 54-280a does not apply to him in connection with his 2002 conviction for murder. Exercising our supervisory authority to review this unpreserved claim, we agree and, accordingly, reverse the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of this appeal. Following events that transpired in 2000, the petitioner was arrested and charged with murder in violation of General Statutes § 53a-54a,[2] carrying a pistol without a permit in violation of General Statutes § 29-35 (a),[3] criminal possession of a weapon in violation of General Statutes § 53a-217,[4] and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c.[5] On May 23, 2002, while represented by counsel, the petitioner entered a guilty plea to one count of murder under the *Alford* doctrine[6] in exchange for a sentence of twenty-five years of incarceration, which plea the trial court, *Fasano, J.*, following a canvass, accepted. On August 2, 2002, the court sentenced the petitioner to twenty-five years of incarceration in accordance with the plea agreement, whereupon the state nolled the additional weapons charges. The petitioner did not file a direct appeal from the judgment of conviction.

[2] Although § 53a-54a was the subject of amendments in 2012; see Public Acts 2012, No. 12-5, § 7; and in 2015; see Public Acts 2015, No. 15-84, § 9; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] Since the events underlying this appeal, § 29-35 was the subject of several amendments that have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[4] Since the events underlying this appeal, § 53a-217 was the subject of several amendments that have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[5] Since the events underlying this appeal, § 53a-217c was the subject of several amendments that have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[6] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

In August, 2014, the self-represented petitioner commenced the present action by filing a petition for a writ of habeas corpus, in which he claimed (1) ineffective assistance of counsel and (2) "bill of attainder / ex post facto violations due to the [DWOR]. P.A. 13-3 / 13-220." Thereafter, on October 21, 2014, the law firm of Ruane Attorneys at Law appeared on the petitioner's behalf as appointed habeas counsel.

On March 1, 2017, the petitioner's appointed counsel filed a motion to withdraw its appearance. In a memorandum of law accompanying the motion to withdraw, the petitioner's counsel submitted that it could not pursue the petitioner's claims in good faith because the claims lacked legal or evidentiary support.[7] On September 10, 2018, the habeas court, *Sferrazza, J.*, denied the motion to withdraw (Judge Sferrazza's order). The court stated: "The court agrees that the legal claims as to ineffective assistance of trial and habeas counsel are frivolous. The court also agrees that the [dangerous weapon offender] registration statutes are constitutional. However, it appears that . . . § 54-280a (a) (2) contains a requirement that a convictee be canvassed as to knowledge of the registration obligations before his guilty plea is accepted. The transcript[s] of the 2002 guilty plea lack reference to this requirement, enacted in 2013."

On December 7, 2018, notwithstanding that he was represented by appointed counsel, the petitioner himself filed a motion titled "motion for pretrial ineffective assistance of counsel," in which he claimed in relevant part that his counsel "insist[ed] on approaching the [DWOR] claim by making an argument of ex post facto violation, but the [petitioner] insist[ed] on approaching the [DWOR] claim by making an argument based on

---

[7] See *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

the meaning of the statute (i.e., legislative intent)" in an attempt to "keep the claim in unison with [Judge Sferrazza's order] . . . that the . . . statutes are constitutional. . . . The petitioner simply would offer evidence as to the legislature's intention to make the statute prospective or retroactive . . . . [I]f the legislature intended for the statute to be prospective then the current language of . . . § 54-280a (a) (2) is clear and unambiguous and intended for convictees who plead guilty on or after the statute's enactment in 2013, which would exclude the petitioner from the registration requirement and obligations. The petitioner's . . . attorney is against making any alternative arguments outside of his ex post facto argument." (Internal quotation marks omitted.) As relief, the petitioner requested that his appointed counsel be replaced with new counsel. A hearing on the petitioner's motion was held on February 15, 2019, whereupon the court, *Newson, J.*, treating the motion as a motion for the removal of counsel and for replacement counsel, denied the motion. Following the court's February 15, 2019 ruling, Attorney Dennis V. Mancini of Ruane Attorneys at Law exclusively submitted pleadings and appeared on the petitioner's behalf for the remainder of the proceedings before the habeas court.

On June 3, 2019, the petitioner, through Mancini, filed an amended petition for a writ of habeas corpus, claiming that § 54-280a as applied to him violates guarantees against ex post facto laws and his right to due process under the Connecticut and United States constitutions. On July 29, 2019, the respondent, the Commissioner of Correction, filed a return denying the petitioner's claimed constitutional violations.

On August 9, 2019, the respondent filed a motion to dismiss the amended habeas petition on the basis that the petitioner had failed to state a claim upon which relief can be granted. At the hearing held by the court,

*Bhatt, J.*, on the respondent's motion to dismiss, Mancini addressed the court and requested leave to file a second amended habeas petition on the basis that "the way [he] drafted the [amended habeas] petition . . . was not in line with what was in . . . [Judge Sferrazza's order]." Specifically, as the court described on the record, "the amended petition as filed d[id] not include the nonfrivolous claim that was identified in [Judge Sferrazza's order] . . . . [T]he amended petition . . . does not raise th[at] issue." The court subsequently granted the petitioner leave to file a second amended petition and took no action on the motion to dismiss.

Thereafter, on November 7, 2019, the petitioner, through Mancini, filed a one count second amended petition for a writ of habeas corpus (operative petition). In the operative petition, the petitioner alleged that, "[a]s a result of [§ 54-280a], [he] will be required to abide by the [DWOR] upon his release from the Department of Correction." The petitioner alleged that his plea was obtained in violation of his due process rights under the Connecticut and United States constitutions because he was not canvassed when he pleaded guilty to murder in 2002 about the requirement—not yet in effect—that he register as a deadly weapon offender on the DWOR, and, therefore, he did not knowingly and voluntarily enter his plea. The petitioner claimed further that, had he been aware of the registration requirement, he would not have pleaded guilty and would have instead proceeded with a trial. The respondent filed a return on December 27, 2019. The respondent admitted therein, inter alia, the petitioner's allegation that the petitioner would be subject to the requirements of § 54-280a upon his release. In addition, relying on *Ramos* v. *Commissioner of Correction*, 67 Conn. App. 654, 789 A.2d 502, cert. denied, 260 Conn. 912, 796 A.2d 558 (2002), the respondent denied the petitioner's allegations in support of his claim that his plea was not knowingly and

voluntarily made in violation of his constitutional right to due process.

The matter was tried to the court on February 10, 2020. The court heard testimony from the petitioner and admitted four transcripts from his criminal proceedings as full exhibits. During trial, the petitioner testified, inter alia, that he was notified by an unspecified individual that he was subject to the registration requirement of § 54-280a.[8] He also testified that he did not think that he would be bound by the DWOR upon his release from custody, "[b]ut [he] was told, yes."

On February 25, 2020, the court issued a memorandum of decision denying the petitioner's operative petition. The court concluded that the "[f]ailure to advise the petitioner of a collateral consequence . . . that did not exist at the time he entered that plea" does not violate due process. In addressing the petitioner's claim predicated on the assertion that the petitioner would not have pleaded guilty had he known of § 54-280a, the court determined that the statute was not punitive in nature and that registration was a collateral consequence of the petitioner's plea such that the criminal trial court was not constitutionally required to inform the petitioner of the consequences relating to the DWOR. Thereafter, the habeas court granted the petitioner's petition for certification to appeal, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the petitioner raises for the first time the precise claim that the court improperly denied his operative petition because § 54-280a does not apply to him,[9] and he seeks a judgment declaring that he is not

_____

[8] The petitioner maintains on appeal that the Department of Correction informed him that he was subject to the registration requirement of § 54-280a.

[9] Although the petitioner's appellate brief references the additional claims that were determined to be frivolous by Judge Sferrazza's order, in his conclusion and request for relief, the petitioner states only that he "would like the court to find that the habeas court erred when it found that the

subject to the DWOR on the basis of his underlying conviction. The petitioner asks that we exercise our supervisory authority to review his claim. As we explain subsequently in this opinion, the respondent now defers to the interpretation of the statute by the Department of Emergency Services and Public Protection (DESPP), which is tasked with establishing and maintaining the DWOR; see General Statutes § 54-280 (b); and which, according to the respondent for the first time on appeal, takes the position that § 54-280a does not apply to the petitioner.[10] Nonetheless, the respondent requests that this court (1) remand the case with direction to dismiss the operative petition for lack of subject matter jurisdiction because the petitioner's claim below was not ripe, or (2) alternatively, affirm the judgment of the habeas court.[11]

petitioner must register as a deadly weapon offender" and to have "the . . . decision overturned, in the interest of justice, and a new trial or directed decision ordered." We therefore construe the petitioner's claim on appeal as challenging the judgment of the habeas court only insofar as it was predicated on the presumption that § 54-280a applied to the petitioner's 2002 conviction.

[10] In his appellee's brief, the respondent states that these representations are "based upon communication with [the DESPP]," and "the [respondent] avers that the DWOR has not historically been applied to individuals in the petitioner's position . . . whose conviction *and* release from incarceration do not *both* occur after January 1, 2014." (Emphasis in original.)

[11] In his appellee's brief, the respondent posits the following arguments: (1) neither the claim contained in the operative petition nor raised on appeal is justiciable because (a) § 54-280a likely does not apply to the petitioner, and (b) even if applicable, the registration obligations occur upon his release, which has yet to happen; (2) the petitioner has abandoned the claim raised in his operative petition, and, in any event, the court properly denied the operative petition on the merits; and (3) the petitioner's claim on appeal is unpreserved and unreviewable because it was not raised in the operative petition, during the habeas proceedings, or addressed by the court in its memorandum of decision.

The respondent argues that the petitioner's claims are unripe because "the . . . claim below was based on the foundational premise that the petitioner will be required in the future to register . . . which has not happened, and may . . . never happen." The respondent also acknowledged that "the petitioner's new claim on appeal is relevant to his position that the petitioner's claim below was premature and unripe . . . ."

Before discussing the petitioner's statutory interpretation claim, we set forth the following additional, relevant procedural history. On January 11, 2024, during oral argument before this court, the petitioner, in addressing the viability of his claim raised on appeal, asserted that he was improperly precluded from raising the issue of whether § 54-280a applied to his 2002 conviction during the pendency of the habeas action, and iterated his argument that he is not subject to the DWOR pursuant to the language of the statute. In addition, the petitioner represented that he is experiencing pressure from the Department of Correction (department) to comply with the registry requirements while he remains incarcerated, and he seeks a judgment declaring that he is not subject to registration.[12]

During the respondent's argument before this court, counsel for the respondent represented the position of the DESPP that the petitioner is not required to register on the DWOR. Specifically, the respondent's counsel stated: "[T]hat's the official position of the DESPP

---

[12] The petitioner stated, for example, that "the Department of [Correction] told [him] that, [he] ha[s] to register" or he "would be denied parole . . . if it became available . . . . I'm eligible for a halfway house . . . but, because I'm noncompliant, I could be denied." He also stated that he believed his noncompliance with the DWOR requirement could result in his being "beat[en] up" because "[a]nything that you fail to do that the Department of [Correction] requires . . . there's a penalty behind it within the Department of [Correction]. . . . If they're requiring [me] to register, [I] have to register or there's a penalty for it. . . . It was never said by the [respondent] at the habeas trial that I wouldn't be made to register. What they said is, 'it's ok it's just like the sex offender registry so just do it.' . . . Now . . . they're trying to say [that I don't have to register] just to get [this court] to dismiss . . . then come to me again and say . . . 'you [have] to register.' . . .

"[W]hat the Department of [Correction] does is . . . take away [risk reduction earned credit] time, or parole . . . so what they try do is get somebody to deny a program or requirement that it requires . . . so now . . . they [can] keep you in jail as long as possible . . . . This is what's going on. Whether people want to believe it, they care or they don't care, this is what's going on."

. . . . I can make that representation as an officer of the court . . . . That is how they've applied it . . . .

"This is the first time we've heard that the [department] told [the petitioner] he would have to go on [the DWOR], and frankly, I'm not disputing what the petitioner said . . . someone very well may have told him [that he had to register], but . . . the DESPP is in charge of this registry, and . . . they've represented that [§ 54-280a] simply doesn't apply to the petitioner because his conviction was pre-2014 and, I, I believe . . . that [the DESPP's position] *is supported by the statute as well. . . .* [Its] position *is based . . . on the statute*, that . . . the registry requirement would apply only to a conviction and release from incarceration post-2014. . . .

"[The petitioner] *is right*, but for a different reason. . . . [His claim] *is based on a foundational premise that he would have to register on the DWOR* . . . . This case really should never have gone forward. . . . [T]he habeas trial is what it is. . . . I don't know why that fact wasn't established, but I am representing to this court that, according to the DESPP, he would not have to register." (Emphasis added.)

Following oral argument and on the basis of our review of the record, we ordered, sua sponte, the respondent to file a supplemental memorandum "stating clearly the position of the Commissioner of the Department of [Correction] regarding whether . . . § 54-280a applies to the petitioner in connection with his 2002 conviction for murder." On February 16, 2024, the respondent filed a supplemental memorandum and appended thereto the department's official response to our question. The response provided in relevant part: "[T]he [d]epartment . . . has no official interpretation of this statute . . . . Whether or not [the petitioner] is required to register on the DWOR upon or after his

release from incarceration is a matter for [the DESPP] . . . .

"[The department] does not maintain [the DWOR], does not report individuals who are not compliant with that registry, or use the failure to register if required by law in any determination or decision it makes about an incarcerated person. . . .

"[The department] does not decide whether an individual may be released on parole or the conditions of parole. . . . [The petitioner] may, however, be released . . . prior to his end of sentence through the discretion of the [respondent] under the [respondent's] own release authority. . . . [R]egistration on the DWOR is not a condition or requirement of this community release and does not influence transitional housing or any other aspect of community release. . . .

"[The department] does advise individuals it is releasing . . . of their need to register for the DWOR. This advisement, however, does not affect release or any conditions of release. [The department] bases its advisement on whether outside sources have indicated that there is a registration requirement . . . . [The petitioner's] current computerized record indicates no DWOR requirement . . . .

"As [the department] does not use registration . . . in any of its decisions regarding incarceration or release, it is never called upon to interpret the applicability of . . . [§] 54-280a. It, therefore, respectfully declines to take any official position on whether this statute applies to [the petitioner] and his 2002 murder conviction."

The foregoing representations reflect that the respondent, now almost one decade following the commencement of this habeas petition, defers to the DESPP's position that § 54-280a does not apply to the petitioner;

it nevertheless contends that the petitioner is not entitled to relief because, inter alia, his claim is unripe and/or unpreserved. The petitioner requests that we exercise our supervisory authority to entertain his unpreserved claim and grant him relief.

I

Because it implicates subject matter jurisdiction, we first address the respondent's claim that this matter should be remanded to the habeas court with direction to render judgment dismissing the petitioner's operative petition on ripeness grounds.[13] See *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 624, 822 A.2d 196 (2003) ("ripeness is a sine qua non of justiciability," which must be resolved as threshold question of subject matter jurisdiction (internal quotation marks omitted)). For the reasons that follow, we conclude that the case before us is ripe for appellate review.

We begin with the standard of review. "[J]usticiability comprises several related doctrines, namely, standing, *ripeness*, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter. . . . A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . [B]ecause an issue regarding justiciability raises a question of law, our appellate review [of a ripeness claim] is plenary. . . .

---

[13] Based on our review of the record, it appears that the respondent did not raise below, and the habeas court did not address, the issue of ripeness. "Our Supreme Court has stated that [o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . One such exceptional circumstance is a claim that implicates the trial court's subject matter jurisdiction, which may be raised at any time and, thus, is not subject to our rules of preservation." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Board of Education* v. *Bridgeport*, 191 Conn. App. 360, 378–79 n.8, 214 A.3d 898 (2019). Because "ripeness implicates the court's subject matter jurisdiction"; id., 379 n.8; we consider the ripeness issue raised by the respondent on appeal.

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, [we] must be satisfied that the case before [us] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Emphasis in original; internal quotation marks omitted.) *Francis* v. *Board of Pardons & Paroles*, 338 Conn. 347, 358–59, 258 A.3d 71 (2021). We conclude that the case before us satisfies this requirement.

We turn to a review of the evolution that the respondent's position has taken throughout the course of this litigation with regard to the applicability of § 54-280a to the petitioner's 2002 conviction. In his operative petition, the petitioner alleged that, "[a]s a result of [§ 54-280a], [he] will be required to abide by the [DWOR] upon his release from the department . . . ." In his return, the respondent *admitted* that allegation. On appeal, however, the respondent's position changed course. In his principal appellee's brief, the respondent contended that, "[u]pon information and belief, based upon communication with the [DESPP], the [respondent] avers that the DWOR has not historically been applied to individuals in the petitioner's position at all whose conviction *and* release from incarceration do not *both* occur after January 1, 2014. See also General Statutes § 54-280a (a) (1) (use of conjunctive 'and' in stating 'Any person who has been convicted . . . of an offense committed with a deadly weapon *and* is released into the community on or after January 1, 2014 . . . .')." (Emphasis in original.) Thus, the respondent argued that the petitioner's claim below was not ripe because he "likely will not have to" register. In his supplemental memorandum, the respondent's position took a slight shift again, i.e., he "decline[d] to take any

official position on whether this statute applies to [the petitioner] and his 2002 murder conviction," in incongruity with the admission in the respondent's return and notwithstanding the court's order to "stat[e] clearly the position of the [respondent] regarding whether . . . § 54-280a applies to the petitioner in connection with his 2002 conviction for murder." Instead, the respondent represented that he defers to the interpretation of the statute by DESPP. We highlight at this juncture, however, that, although the DESPP is statutorily tasked with establishing and maintaining the DWOR, the department is not without its own obligations under § 54-280a. That is, § 54-280a (a) (1) provides that an eligible convictee, "if such person is in the custody of the Commissioner of Correction," shall register with the DWOR "at such time prior to release as the Commissioner of Correction shall direct . . . ."

This background evidences a justiciable controversy where the parties' interests were adverse at the time of the operative petition and return, and the adversity of their interests has not been rendered moot by the current position of the respondent. See *Stafford* v. *Commissioner of Correction*, 207 Conn. App. 85, 93–98, 261 A.3d 791 (2021). There remains a substantial question in dispute, which we now resolve, as to whether § 54-280a applies to the petitioner's 2002 conviction—a determination that results in practical relief to the petitioner and a guide to the present conduct of the parties. In sum, we conclude that the petitioner's claim is ripe for review.

II

We now turn to the merits of the petitioner's claim that § 54-280a does not apply to his 2002 conviction. As our Supreme Court has explained, "in addition to the authority to review unpreserved claims under the plain error doctrine and [*State* v. *Golding*, 213 Conn.

233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)], a reviewing court has the authority to review such claims under its supervisory power." (Emphasis omitted.) *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 155, 84 A.3d 840 (2014). "It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . The exercise of our supervisory powers is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Three criteria must be met in order for this court to consider exercising its supervisory authority: (1) the record must be adequate for review; (2) all parties must be afforded an opportunity to be heard on the issue; and (3) review of an unpreserved claim must not prejudice a party. . . . If these three threshold considerations are satisfied, the reviewing court next considers whether one of the following three circumstances exists: (1) the parties do not object; (2) the party that would benefit from the application of this court's supervisory powers cannot prevail; or (3) a claim of exceptional circumstances is presented that justifies deviation from the general rule that unpreserved claims will not be reviewed." (Citations omitted; internal quotation marks omitted.) *In re Jacquelyn W.*, 169 Conn. App. 233, 239, 150 A.3d 692 (2016); see also *Bridgeport* v. *Freedom of Information Commission*, 222 Conn. App. 17, 36–37, 304 A.3d 481 (2023) (exceptional circumstances may justify review of unpreserved claim by reviewing court), cert. denied, 348 Conn. 936, 306 A.3d 1072 (2024). We also note that "a reviewing court, although not *bound* to consider a claim that was not

raised to the trial court, may do so at its discretion. . . . We are unaware of any statutory or procedural rule limiting that discretion." (Emphasis in original; internal quotation marks omitted.) *Curley* v. *Phoenix Ins. Co.*, 220 Conn. App. 732, 743–44, 299 A.3d 1133, cert. denied, 348 Conn. 914, 303 A.3d 260 (2023).

The threshold requirements for the exercise of our supervisory authority to review the petitioner's unpreserved claim are satisfied in this case, as (1) the record is adequate to review the claim, (2) the parties have been afforded an opportunity to be heard on the claim, and (3) we discern no prejudice to any party resulting from our review of the claim, particularly given that the respondent no longer contends that § 54-280a applies to the petitioner. In addition, we conclude that there are exceptional circumstances justifying review of this unpreserved claim, as determining the applicability of § 54-280a to the petitioner would serve the important interests of judicial efficiency, clarity in the law, and the fair administration of justice. See *Stafford* v. *Commissioner of Correction*, supra, 207 Conn. App. 96 ("the petitioner would benefit from a judicial determination of [parole] eligibility because it is an enforceable judgment that would ensure that [he] would not need to seek such a declaration by a court in the future if the respondent or the department were again to change their position"). Moreover, although the respondent has represented that, according to the DESPP, § 54-280a does not apply to the petitioner, "the notion that no actual controversy between the parties exists regarding the issue of the petitioner's eligibility is somewhat belied by this appeal. . . . [I]f there truly is no dispute between the parties on the issue . . . the parties could have so stipulated at any time, or the respondent could have confessed to a judgment in the petitioner's favor in the habeas court." Id., 97–98. Accordingly, we exercise our supervisory authority to address the petitioner's unpreserved claim.

The following legal principles are relevant to our resolution of the petitioner's claim. "Whether a habeas court properly [denied] a petition for a writ of habeas corpus presents a question of law over which our review is plenary. . . . [When] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) Id., 100.

Resolving the petitioner's claim requires us to construe § 54-280a, which presents a question of statutory interpretation subject to plenary review. See *Keller* v. *Beckenstein*, 305 Conn. 523, 532, 46 A.3d 102 (2012) ("[i]ssues of statutory interpretation constitute questions of law over which the court's review is plenary" (internal quotation marks omitted)). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Bridgeport* v. *Freedom of Information Commission*, supra, 222 Conn. App. 48.

"It is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections

concurrently in order to reach a reasonable overall interpretation." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 9, 905 A.2d 55 (2006). Applying this principle to § 54-280a, and for the reasons that follow, we conclude that, in order for a convictee to be subject to the registration requirements of § 54-280a, both the conviction date and the release date must be on or after January 1, 2014.

We now turn to the text of the relevant statutes. Section 54-280 charges the DESPP with "establish[ing] and maintain[ing] a registry of all persons required to register under section 54-280a as offenders convicted of an offense committed with a deadly weapon. . . ." General Statutes § 54-280 (b). Section 54-280a (a) (1) sets forth the eligibility requirements that, when met, subject an individual to registration on the DWOR and provides that "[a]ny person who has been convicted . . . of an offense committed with a deadly weapon *and* is released into the community *on or after January 1, 2014*, shall . . . following such release or, if such person is in the custody of the Commissioner of Correction, at such time prior to release as the Commissioner of Correction shall direct, and whether or not such person's place of residence is in this state, register such person's name, identifying factors, criminal history record, residence address and electronic mail address with the [DESPP] . . . ." (Emphasis added.) Because the petitioner was convicted prior to January 1, 2014, but could only be released into the community sometime after January 1, 2014, the specific statutory question before us is whether the phrase "on or after January 1, 2014," applies to the petitioner's date of conviction or only to the petitioner's date of release.

The next subdivision, § 54-280a (a) (2), is instructive on this question and provides that, "[p]rior to accepting a plea of guilty or nolo contendere from a person with respect to an offense committed with a deadly weapon,

the court shall (A) inform the person that the entry of a finding of guilty after acceptance of the plea will subject the person to the registration requirements of this section, and (B) determine that the person fully understands the consequences of the plea." Because this subdivision requires a court, prior to accepting a plea of guilty or nolo contendere to an eligible charge, to canvass a criminal defendant about the registration requirements of § 54-280a, the violation of which constitutes a class D felony, it necessarily follows that the conviction date referenced in subdivision (a) (1) must be on or after January 1, 2014. To conclude otherwise would render subdivision (a) (2) meaningless in the context of an otherwise eligible conviction rendered prior to January 1, 2014. See *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 474, 28 A.3d 958 (2011) ("[I]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.)). That is, the court, when canvassing the petitioner in 2002 with respect to his guilty plea, could not have complied with the additional canvass requirement set forth in § 54-280a, enacted in 2013.

In sum, the plain and unambiguous text of § 54-280a expressly limits the registration requirements set forth therein to offenders of eligible crimes who are both "convicted . . . of an offense committed with a deadly weapon *and . . .* released into the community *on or after January 1, 2014* . . . ." (Emphasis added.) General Statutes § 54-280a (a) (1). This reading of the statute is consistent with the DESPP's interpretation of the statute, as represented to this court through the respondent's counsel and its conclusion that the registration

requirement of § 54-280a does not apply to the petitioner in relation to his 2002 conviction.

In reaching its conclusion on the petitioner's claim below, the habeas court did not have the benefit of the respondent's representation that, according to the DESPP, § 54-280a does not apply to the petitioner's 2002 conviction. As the respondent indicated in his supplemental memorandum and as the record reflects,[14] the court "appeared to assume, without explicitly making a finding, that the petitioner would be required to register on the DWOR" in rendering its decision on the petitioner's operative petition. Therefore, the court, through no fault of its own and relying on Judge Sferrazza's order, did not correctly apply the law when it determined that § 54-280a, as applied to the petitioner's 2002 conviction, did not violate the petitioner's right to due process. Thus, the petitioner is entitled to the reversal of the habeas court's judgment.

In sum, understanding that the exercise of our supervisory powers under these circumstances is an extraordinary remedy, we conclude that the habeas court improperly denied the petitioner's operative petition because the entire premise of the habeas court's decision, that § 54-280a is applicable to the petitioner's 2002 conviction, was incorrect.

The judgment is reversed and the case is remanded with direction to render judgment stating that General

---

[14] For example, in its legal analysis, the court set forth the questions that it considered "[t]o determine whether the . . . failure to inform the petitioner that *he would be required to register* on [the DWOR] renders that plea involuntary . . . ." (Emphasis added.) In addition, and as discussed in this opinion, the petitioner filed his second amended petition because his prior amended petition did not contain the only claim identified in Judge Sferrazza's order as nonfrivolous, namely, that the petitioner was not canvassed on § 54-280a at the time he entered his guilty plea. In addressing the request to amend the petition, the court stated that it had "no choice but to allow [the petitioner] to amend the petition to conform to that ruling. Otherwise . . . essentially, it is ineffective assistance of counsel for failing to do that."

Statutes § 54-280a does not apply to the petitioner with respect to his 2002 conviction.

In this opinion the other judges concurred.