******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LALE VAROGLU *v.* JOSEPH SCIARRINO
## (AC 39345)

Lavine, Keller and Bishop, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court dissolving her marriage to the defendant and making certain financial orders. She claimed that certain of the trial court's factual findings were clearly erroneous and that certain of its financial orders were improper. *Held*:

1. The plaintiff's claim that the trial court improperly found that she had purchased a condominium by using funds from a loan that was secured by the marital home was unavailing, as that court's finding was supported by the evidence and the defendant's testimony that the plaintiff had done so.

2. The plaintiff could not prevail on her claim that the trial court improperly failed to award her more than 40 percent of the net proceeds from the sale of the marital home, which was based on her assertion that the court failed to adequately take into account her role in preserving the marital property; that court properly considered the appropriate statutory factors, and its award concerning the distribution of the equity in the marital home was supported by the evidence and within the court's discretion, as there was no indication that the court failed to take into account the plaintiff's contribution to the preservation of the marital home, and the court's property distribution could be considered favorable to the plaintiff, who had contributed 22 percent toward the purchase of the marital home and was responsible for only one third of the expenses to maintain the property when the parties lived together in the home.

Argued April 16—officially released September 25, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Michael E. Shay*, judge trial referee; judgment dissolving the marriage and granting certain other relief, from which the plaintiff appealed to this court. *Affirmed.*

*Kevin F. Collins*, for the appellant (plaintiff).

*Norman A. Pattis*, with whom, on the brief, was *Joseph Sciarrino*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Lale Varoglu, appeals from the judgment of the trial court dissolving her marriage to the defendant, Joseph Sciarrino. The plaintiff claims that the court erred in finding certain facts and in fashioning its orders pertaining to the distribution of the equity in the marital home by failing to apply the "preservation" criteria in General Statutes § 46b-81 (c). We affirm the judgment of the trial court.[1]

The plaintiff brought this proceeding to dissolve her marriage to the defendant. Following a trial, the court found the following relevant facts as set forth in its May 17, 2016 memorandum of decision. The court stated: "The plaintiff . . . and the defendant . . . were married in Westport . . . on August 5, 2012. This is a second marriage for the [defendant]. No children have been born to the [plaintiff] since the date of this marriage . . . . The parties have lived separate and apart since April 5, 2014, when the [defendant] left the marital home . . . in Westport, which the [plaintiff] continues to occupy. The [defendant] currently occupies a two bedroom apartment in Stamford. . . .

"The principal bone of contention is the equitable distribution of the marital home at 2 Ledgemoor Lane in Westport, which was purchased by the parties [on] March 1, 2010, prior to their marriage for $1,950,000. . . . The [defendant] contributed the sum of $1,535,670 toward the purchase price, which sum represented his share of the net proceeds from the sale [of] some Nantucket property, which was part of a previous divorce settlement. The [plaintiff] contributed approximately $418,000. Title to the property was taken in the name of 2 Ledgemoor Lane, LLC, in which the [defendant] held a 65 percent interest and the [plaintiff] held a 35 percent interest, which was intended to be a rough approximation of their respective monetary contributions to the purchase. In point of fact, the actual ratio was approximately 78 percent to 22 percent. The fact that title is held in the name of a limited liability corporation is a complicating factor. The [defendant] testified that the purpose of taking title in the name of the LLC was to insulate him from any claims arising out of his dental practice. On questioning by the [plaintiff's] counsel, he also admitted that another purpose was to insulate him from outstanding claims by the [Internal Revenue Service, the Department of Revenue Services], and First County Bank. The parties worked out an arrangement to maintain the property, whereby the [defendant] would contribute $4000 per month and the [plaintiff] would contribute $2000. This arrangement continued until April, 2014, when the [defendant] left the marital home. . . .

"On June 3, 2010, with the agreement of the [defendant], the [plaintiff], borrowed $350,000. . . . at which

time . . . the bank insisted for security that she have an 'overwhelming percentage interest' in the LLC, before it would advance the funds. Ownership of the LLC was then changed to 75 percent in favor of the [plaintiff] and 25 percent in favor of the [defendant], which is the situation as of trial. . . . This change was clearly done for convenience, in order to obtain the loan, and the amended ratio bore no relation to the actual monetary contributions of the respective parties. The underlying operative agreement was not amended except as to ownership. . . . The [defendant] testified that the parties had an agreement that $100,000 of the loan proceeds would be used to fund the post-high school education of his children from his first marriage, with the balance used for home improvements. Instead . . . the [plaintiff] gave the [defendant] $12,000 in cash, to replace that sum he claimed was stolen by a household employee, but more important[ly], she purchased a condominium [in] Crested Butte, Colorado, which she has valued at $162,000 the price that she originally paid for it. Title was taken in the name of LV Solutions, LLC, of which she is the sole member. . . .

"As to the cause of the breakdown of the marriage, the [defendant] told the [plaintiff] that he had begun an extramarital affair . . . approximately seven months after their marriage . . . . He told the court that 'things were not working out for him.' In fact, at one point, he suggested to [the plaintiff] that the girlfriend could move into the marital residence with them. . . . [H]e testified that the [plaintiff] had 'aggressively interjected herself in his finances,' and that had 'made him nervous.' The [defendant's] claim simply does not hold water. For one thing, the [defendant's] finances were in shambles long before the marriage, and for another, even while they were living together before marriage, they had substantial financial dealings together. The [defendant] fails to see the irony in his position, where, in essence, the [plaintiff] literally rode to his rescue with her earnings from employment and her excellent credit. But for her, the car he drives and some of the equipment in his dental practice would not have happened . . . . Moreover, the fact that his investment in the marital home has been largely shielded from the taxing authorities due to her cooperation is not fully appreciated by him." As a result, the court found that "the marriage of the parties has broken down irretrievably, and . . . the [defendant] is primarily at fault for said breakdown."

The court ordered that "[t]he entity know as LV Solutions, LLC, of which the [plaintiff] is the sole member, and which, in turn, is the owner of real estate [in] Crested Butte, Colorado, shall remain the property of the [plaintiff], subject to any existing liens or other indebtedness, free and clear of any claims by the [defendant]. . . . The [plaintiff] shall have exclusive possession of the real estate located at 2 Ledgemoor Lane,

Westport, Connecticut, subject to any existing indebtedness, and she shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the [defendant] harmless from any further liability thereunder. As to said real estate, the parties shall list [the home] for sale no later than July 1, 2016, with a mutually acceptable broker . . . . Unless the parties shall otherwise agree, they shall accept any bona fide offer without unusual conditions, which is within 5 percent of the listing price. Upon sale of the property, from the proceeds shall be paid the customary and ordinary costs associated with a sale of real estate, including broker and attorney fees, conveyance taxes, and any mortgages and liens. After the payment of these sums, the net proceeds shall be divided 60 percent to the [defendant] and 40 percent to the [plaintiff]. In addition, in order to effectuate the foregoing, the parties are hereby ordered to cooperate in the preparation and filing of any necessary documentation, including any amendments to or termination of the operating agreement . . . or amended operating agreement . . . or other related paperwork, for 2 Ledgemoor Lane, LLC."[2] (Citations omitted; emphasis omitted.)

## I

The plaintiff claims that the court made clearly erroneous factual findings. Specifically, the plaintiff argues that the court erred when it found that she purchased her condominium in Crested Butte using funds from the loan secured by the marital home.

The following evidence was presented to the court. The defendant testified that the plaintiff purchased the Crested Butte property using money "from the original loan of the [$350,000], which she borrowed for 2 Ledgemoor Lane."

"A dissolution action is essentially equitable in nature. . . . The trial court's equity powers are essential to the task of fashioning relief out of the infinite variety of factual situations presented in family cases. . . . Decision making in family cases requires flexible, individualized adjudication of the particular facts of each case. This court will not substitute its own opinion for the factual findings of the trial court. . . . The trial court has a distinct advantage over a reviewing court in determinations of fact in domestic relations matters because all of the surrounding circumstances, including the appearance and attitude of the parties, are so important. . . . The trial court has the unique opportunity to view the evidence presented in a totality of the circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold printed record which is available to the reviewing court." (Internal quotation marks omitted.) *Solomon* v. *Solomon*, 67 Conn. App. 91, 91–92, 787 A.2d 4 (2001).

"The trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence." (Internal quotation marks omitted.) *Marinos* v. *Building Rehabilitations, LLC*, 67 Conn. App. 86, 89, 787 A.2d 46 (2001). "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *DiVito* v. *DiVito*, 77 Conn. App. 124, 137, 822 A.2d 294, cert. denied, 264 Conn. 921, 828 A.2d 617 (2003).

We do not agree with the plaintiff's assertions that the court made improper findings pertaining to the plaintiff using proceeds from a loan secured by the marital home to purchase property in Crested Butte. This finding was supported by the evidence because the defendant testified that the plaintiff did so and, upon review of the record, we are not left with a firm conviction that a mistake has been made. Furthermore, despite the plaintiff's use of a portion of the loan proceeds in a manner that the defendant claims he did not intend, the court awarded her the Colorado property free and clear of any claims by the defendant.

II

The plaintiff's second claim is that the court erred in fashioning its orders pertaining to the distribution of the equity in the marital home by failing to apply the "preservation" criteria in § 46b-81 (c). The plaintiff asserts that the court should have awarded her more than 40 percent of the net proceeds from the court-ordered sale of the home. In support of her position, the plaintiff argues that the court, when making property distributions, failed to adequately take into account her role in preserving the marital property and that, instead, the court improperly relied on the parties' premarital contributions to the acquisition of the marital home.

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) *Boyne* v. *Boyne*, 112 Conn. App. 279, 282, 962 A.2d 818 (2009). "Our standard of review in domestic relations cases is very narrow, and we will afford great deference to a trial court's rulings." *Sheikh* v. *Sheikh*, 33 Conn. App. 927, 927, 636 A.2d 866 (1994). "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In

determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant. . . .

"Importantly, [a] fundamental principle in dissolution actions is that a trial court may exercise broad discretion in . . . dividing property as long as it considers all relevant . . . criteria [in § 46b-81 (c)]. . . .[3] While the trial court must consider the delineated statutory criteria [when allocating property], *no single criterion is preferred over others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case.* . . . In dividing up property, the court must take many factors into account. . . . A trial court, however, need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Emphasis added; footnote added; internal quotation marks omitted.) *Kent* v. *DiPaola*, 178 Conn. App. 424, 431–32, 175 A.3d 601 (2017).

Our review of the record leads us to conclude that the court properly considered the appropriate statutory factors and that the award made by the court concerning the distribution of the equity in the marital home was both supported by the evidence and within the parameters of the court's discretion. As previously stated, the court found that the plaintiff's majority ownership in 2 Ledgemoor Lane, LLC, prevented the defendant's creditors from levying on the marital home and stated that the plaintiff's "contribution to the preservation of . . . the real estate, was substantial." There is no indication that the court failed to take into account her contribution to the preservation of the marital home when making its distribution of the equity in the marital home. Moreover, we note that, despite the plaintiff's protests, the court's property distribution can be considered favorable to her. Despite the plaintiff's having contributed 22 percent toward the purchase of the marital home and only being responsible for one third of the expenses to maintain the property when the parties lived together in the home, the court awarded the plaintiff 40 percent of the net proceeds from the sale of the home. For these reasons, we will not disturb the court's orders.

The judgment is affirmed.

[1] The plaintiff also lists a claim pertaining to the defendant being bound by representations he made to a Bankruptcy Court. As the plaintiff fails to adequately brief this claim, we decline to review it. See *Keating* v. *Ferrandino*, 125 Conn. App. 601, 604, 10 A.3d 59 (2010).

[2] The court also awarded periodic alimony to the plaintiff of $3000 per month for a period of one year.

[3] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."