******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TIMOTHY J. HALLOCK *v.*
# JENNIFER L. HALLOCK
## (AC 46014)

Seeley, Westbrook and Pellegrino, Js.

*Syllabus*

The defendant appealed from the judgment of the trial court dissolving her marriage to the plaintiff and issuing various orders. The defendant claimed, inter alia, that the trial court failed to address her pendente lite motions for alimony and counsel fees in a separate and distinct manner prior to considering the final financial orders. *Held*:

The trial court properly considered all of the plaintiff's pendente lite motions for alimony and counsel fees, independently adjudicated those motions, and incorporated its ruling on those motions in its final financial orders as part of the dissolution of the parties' marriage, and it declined to award alimony or attorney's fees pendente lite.

This court concluded that the defendant's claim that the trial court applied an improper legal standard to her claim for alimony and the division of the marital property was without merit, as the trial court properly cited to and applied the relevant statutes (§§ 46b-81 and 46b-82) in issuing its financial orders.

The trial court did not abuse its discretion in declining to award attorney's fees to the defendant.

Contrary to the defendant's assertion, the trial court did not take judicial notice of facts regarding the defendant's employment opportunities and future earnings as part of its determination that the defendant had the ability to support herself following the dissolution judgment and financial orders. The trial court rejected the defendant's testimony regarding the cause of the dissolution of the marriage as not credible, and, contrary to the defendant's claim, it did not discredit that testimony due to a lack of corroborating evidence.

Argued May 14—officially released September 17, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Moukawsher, J.*; judgment dissolving the marriage and

granting certain other relief, from which the defendant appealed to this court. *Affirmed.*

*Alexander J. Cuda*, for the appellant (defendant).

*Dyan M. Kozaczka*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The defendant, Jennifer L. Hallock, appeals from the judgment of the trial court dissolving her marriage to the plaintiff, Timothy J. Hallock, and entering certain financial orders. On appeal, the defendant claims that the court (1) failed to properly consider her pendente lite motions for alimony and counsel fees, (2) applied an improper legal standard to her claim for alimony and the division of the marital property, (3) applied an improper legal standard to deny her claim for attorney's fees, (4) improperly took judicial notice of facts regarding her employment prospects and earning capacity, and (5) improperly discredited her testimony that the plaintiff's consumption of alcohol caused the marriage to end. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the issues raised in this appeal. The parties were married on June 17, 2017, in Greenwich and do not have any children together. The plaintiff has two adult children from his prior marriage, and the defendant has three children from her prior marriage, two of whom were adults and one of whom was age sixteen at the time of the dissolution judgment. The plaintiff commenced this dissolution action in March, 2020, alleging that the marriage had broken down irretrievably. During the pendency of the action, the defendant filed pendente lite motions for attorney's fees and alimony, which were not acted on prior to the dissolution trial.

The court, *Moukawsher*, *J.*, held a trial on October 24, 2022, and, three days later, issued a memorandum of decision. At the outset, the court noted that, during the parties' marriage of approximately three years, their lives did not "intertwine enough to merit seismic shifts in the parties' finances." It then found that the plaintiff had purchased a home for the merged family to live in. The plaintiff's income exceeded $500,000 per year, while the defendant earned "very little" and did not contribute to the purchase or upkeep of the marital home.

The court next rejected the defendant's claim that she had an "automatic claim on at least the assets [the plaintiff] realized during the marriage." Specifically, the court stated: "The real question here is whether [the defendant] contributed to acquiring, preserving, or adding to any of the property in [the plaintiff's] possession. The problem for her is that she didn't. By moving her family in with [the plaintiff, the defendant] improved her financial situation and her children's lifestyle. She did make nonmonetary contributions, but nothing about them can be seen as enabling the financial successes [the plaintiff] enjoyed during the period."

The court declined to award alimony to the defendant. It also rejected the defendant's assertion that the plaintiff's drinking was the cause of the breakdown of the marriage. It ordered the plaintiff to make a single payment of $40,000 and to transfer $60,000 from his 401 (k) account to the defendant. The parties otherwise retained their respective bank and retirement accounts. The court awarded the plaintiff sole ownership of the marital home. The court further ordered each party to be responsible for their respective attorney's fees. Finally, the court stated that it "has considered all pending motions in making this decision. It resolves all of them." This appeal followed.

On March 14, 2023, the defendant filed a motion for articulation, requesting the court to provide further details regarding (1) the nonmonetary contributions she made, (2) how the court arrived at the amounts of the cash payment and retirement account transfer, (3) the reasoning for its denial of an award of counsel fees, and (4) the specific pending motions it had resolved, as well as the reasoning and outcome of these motions.

On July 11, 2023, the court granted the defendant's motion and issued its articulation. As to the first request, the court explained that the defendant's nonmonetary contributions "included caring for the children including [the plaintiff's] from a prior marriage and for the household in general. Making meals and shopping. She contributed by supporting [the plaintiff] by participating in social occasions that might benefit his career such as fundraisers and dinners with friends and acquaintances." As to the second request, the court stated that the basis for the single cash payment and transfer from the retirement account was its consideration of her contributions to the household, her age, her employment prospects, and her time when she was not employed. "The court's overall purpose was to provide a way forward for [the defendant] without granting her a windfall based solely on being married to [the plaintiff]. The decision was a matter of the court's judgment of the case overall and what would be needed to carry out its views." As to the third request for articulation, the court explained that it "saw no reason under the applicable statutes to award [the defendant] attorney's fees or to award them outside of the statutes for bad faith. . . . Having reviewed all the factors in General Statutes § 46b-82, the court believed that [an attorney's] fee award to [the defendant] was not appropriate considering its financial orders, nor would those orders be frustrated by a failure to grant it." As to the fourth request, it stated: "The court resolved pending motions

not by independently resolving them but by rolling all issues into the trial. The phrasing used was intended to indicate this. It was not a way of indicating that it had separately adjudicated any particular motions."

Before considering the specific claims raised by the defendant in this appeal, we recite the relevant legal principles with respect to the financial orders in a dissolution action. "We review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . In determining whether the trial court's broad legal discretion is abused, great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . We apply that standard of review because it reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Anderson-Harris* v. *Harris*, 221 Conn. App. 222, 246–47, 301 A.3d 1090 (2023); see also *Varoglu* v. *Sciarrino*, 185 Conn. App. 84, 91–92, 196 A.3d 856 (2018).

I

The defendant first claims that the court failed to properly consider her pendente lite motions for alimony and counsel fees. Specifically, she argues that the court did not address these motions in a separate and distinct manner prior to considering the final financial orders contrary to controlling precedent. We disagree.[1]

---

[1] We note that "[p]endente lite orders are temporary orders of the court that are necessarily extinguished once a final judgment has been rendered. . . . Once a final judgment has been rendered, an issue with respect to a pendente lite order is moot because an appellate court can provide no practical relief. . . . As a result, an appellate court lacks subject matter

The following additional facts and procedural history are necessary for the resolution of this claim. On March 6, 2020, the defendant filed a motion for attorney's fees pendente lite in which she asserted that the plaintiff controlled all the marital assets and that she lacked sufficient income and funds to defend this action. On July 2, 2020, the defendant filed a motion for alimony pendente lite,[2] and this motion was served on the plaintiff six days later. On November 6, 2020, the defendant filed a request for the court to hold a hearing on, inter alia, her pendente lite motions. In this request, the defendant claimed that the plaintiff had removed her access to the marital credit cards and had not provided her with any financial support following the commencement of this action, resulting in an immediate need for

jurisdiction over a pendente lite order after the trial court has rendered a final judgment." (Internal quotation marks omitted.) *Netter* v. *Netter*, 220 Conn. App. 491, 494–95, 298 A.3d 653 (2023); *R. S.* v. *E. S.*, 210 Conn. App. 327, 330, 269 A.3d 970 (2022). This rule, however, does not apply under the facts and circumstances of the present case.

In the present case, the trial court addressed and denied the defendant's pendente lite motions seeking attorney's fees and alimony at the time it rendered the final judgment of dissolution. As a result, the defendant did not have an opportunity to challenge the court's denial of her pendente lite motions until the rendering of the final dissolution judgment. We also are mindful that the court could have, but did not, order pendente lite attorney's fees or alimony, and, if it had done so, such unpaid obligations would be, in effect, debts that became vested rights of property that the court cannot take away, regardless of the final financial orders. See *Papa* v. *Papa*, 55 Conn. App. 47, 53, 737 A.2d 953 (1999); *Elliott* v. *Elliott*, 14 Conn. App. 541, 545, 541 A.2d 905 (1988). For these reasons, we conclude that this claim is not moot.

[2] "The purpose of alimony pendente lite is to provide support to a spouse [whom] the court determines requires financial assistance pending the dissolution litigation and the ultimate determination of whether that spouse is entitled to an award of permanent alimony. . . . [T]he fundamental purpose of alimony pendente lite is to provide the [recipient spouse], during the pendency of the divorce action, with current support in accordance with [the recipient spouse's] needs and the [obligor spouse's] ability to meet them. . . . [A]limony is not designed to punish, but to ensure that the former spouse receives adequate support." (Citations omitted; internal quotation marks omitted.) *Dumbauld* v. *Dumbauld*, 163 Conn. App. 517, 525–26, 136 A.3d 669 (2016).

such support. The court issued an order granting the defendant's request on December 2, 2020.

On December 22, 2020, the plaintiff filed a motion for a continuance of the next hearing date, which was granted that same day. On February 4, 2021, the plaintiff filed a motion for a second continuance. The defendant objected, arguing that her motion for alimony pendente lite had been pending for more than seven months,[3] during which time "the plaintiff has provided no support and the defendant has had no access to marital funds, except for her very limited self-employment income." The court denied the plaintiff's second motion for a continuance.

On February 8, 2021, the defendant filed updated proposed orders for alimony pendente lite, in which she requested $11,000 per month, retroactive to July 8, 2020, the date of service of her motion for alimony pendente lite. As to the issue of attorney's fee pendente lite, the defendant requested the court to order the plaintiff to pay $32,714.78. On July 6, 2021, the court referred the case to the Stamford Special Masters Program.[4] Following further discovery, the court, *Moukawsher, J.*, issued a trial management order on August 22, 2022. The parties then submitted proposed orders,[5]

---

[3] In her objection, the defendant represented that her motion for alimony pendente lite had been scheduled to be heard on September 29, 2020, but was continued to February 9, 2021, at the request of the plaintiff.

[4] Special Masters are part of the Judicial Branch's alternative dispute resolution program and may be used to settle limited contested and contested family cases. See State of Connecticut, Judicial Branch, Alternative Dispute Resolution, available at https://www.jud.ct.gov/external/super/altdisp.htm (last visited September 6, 2024).

[5] In the defendant's proposed orders filed on October 19, 2022, she requested the court to order the plaintiff to pay her pendente lite alimony of $9500 per month retroactive to July 8, 2020, for a total of $256,500. She further requested that neither party pay permanent alimony and she sought an order requiring the plaintiff to pay all of her outstanding attorney's fees. In the plaintiff's proposed orders, also filed on October 19, 2022, he requested that alimony not be awarded to either party and that each party be solely responsible for his or her attorney's fees.

financial affidavits, witness lists, exhibits and a statement of facts. The court did not hold a pretrial hearing on the defendant's pendente lite motions.

The court conducted the dissolution trial on October 24, 2022. At the outset, the defendant's counsel informed the court that there were some outstanding pendente lite motions regarding alimony and attorney's fees. In its memorandum of decision, the court declined to award alimony to either party and stated that each party would be responsible for their own attorney's fees. It also noted: "The court has considered all pending motions in making this decision. It resolves all of them." In the articulation as to its resolution of the pendente lite motions, the court explained that it had "resolved pending motions not by independently resolving them but by rolling all issues into the trial. The phrasing used was intended to indicate this. It was not a way of indicating that it had separately adjudicated any particular motions."

On appeal, the defendant contends that the court failed to make an independent determination of her pendente lite claims for alimony and attorney's fees before entering the final financial orders as part of the dissolution judgment. We disagree that the approach utilized by the court in the present case constituted reversible error.

In support of her claim, the defendant argues that, pursuant to our Supreme Court's decision *Ahneman* v. *Ahneman*, 243 Conn. 471, 482, 706 A.2d 960 (1998), the trial court lacked authority to refuse to consider her pendente lite motions. She also directs our attention to *Milbauer* v. *Milbauer*, 54 Conn. App. 304, 309–10, 733 A.2d 907 (1999), in which this court approved the process used by the trial court to first resolve the issues raised in a pendente lite motion and then, at the same proceeding, moved on to the final hearing and ultimate

dissolution of the marriage. Specifically, we noted that "[i]t is clear from an examination of the record . . . that two separate hearings were held and that those hearings were conducted by the same judge sitting as two separate courts. The trial court initially took evidence regarding the defendant's motion to modify the pendente lite award and then moved on to the final hearing concerning the ultimate dissolution of the parties' marriage. So . . . it is clear that the trial court in this case sat both as a pendente lite court and as a final court of dissolution and was not precluded, therefore, from entering orders as to both the alimony pendente lite award and the final dissolution." (Emphasis omitted; footnote omitted.) Id. Although we agree that the procedure used in *Milbauer* was proper, there is no requirement that the trial court conduct separate hearings to address the pendente lite claims first before moving on to deciding those issues in its permanent orders.

On appeal, the defendant argues that the court failed to independently adjudicate her pendente lite motions, contrary to *Ahneman* and *Milbauer*. Underlying the defendant's argument is her view that the court did not consider her pendente lite motions independently and distinctly from the final financial orders made in conjunction with the dissolution judgment. On the basis of our interpretation of the court's memorandum of decision and articulation, we disagree with the defendant's interpretation of the court's actions. In our view, the court, during the course of a single hearing, separately and distinctly considered all of the requests for pendente lite orders of attorney's fees and alimony and declined to make such an award in issuing its final financial orders as part of the dissolution judgment. We further conclude that the court's actions were not improper.

"The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . [W]e are mindful that an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *Buchenholz* v. *Buchenholz*, 221 Conn. App. 132, 138, 300 A.3d 1233, cert. denied, 348 Conn. 928, 304 A.3d 860 (2023); see also *In re Paulo T.*, 213 Conn. App. 858, 878, 279 A.3d 766 (2022) (opinion of trial court must be read in its entirety and it is presumed to have acted properly in performance of its duties), aff'd, 347 Conn. 311, 297 A.3d 194 (2023).

After reviewing the record before us, including the trial transcript, the court's memorandum of decision and its subsequent articulation, we conclude that the court independently considered the claims made in the pendente lite motions filed by the defendant and incorporated its ruling on those motions in its final financial orders as part of the ultimate dissolution of the parties' marriage following the trial held on October 24, 2022. At the outset of the trial, the court was aware of the pending pendente lite motions. In its memorandum of decision, the court specifically stated that it had considered and resolved all of the pending motions. Although the court did not expressly set forth its reasoning for doing so, the court declined to award alimony or attorney's fees pendente lite. In its articulation, the court explained that it did not address the pendente lite motions in a separate hearing, but rather considered

them during the trial itself.[6] This approach differs from the procedure used in *Milbauer* v. *Milbauer*, supra, 54 Conn. App. 309–10, but is not improper. We iterate that *Milbauer* does not require a court to conduct separate hearings with respect to pendente lite issues if it considers these issues in deciding the permanent orders as was done in this case. In light of the totality of the memorandum of decision and the court's articulation,[7] and our presumption that the court acted properly in the performance of its duties, we conclude, contrary to the argument of the defendant, that it independently adjudicated the pendente lite motions, albeit as part of its final financial orders. Although our law provides a process to order temporary or pendente lite orders of alimony and support, it does not require that the court consider these motions as a condition precedent to making final orders. In this matter, the court did not refuse to consider the defendant's pendente lite motions nor did the defendant object to the court addressing the final requests for support and alimony before it considered her pendente lite motions. Moreover, the defendant has not presented us with any persuasive argument that the consideration of these motions at the dissolution trial was improper. Accordingly, we conclude that this claim is without merit.

---

[6] We note that the trial court has broad discretion in managing its docket, but still is required to consider and decide all motions properly placed before it. See *Kammili* v. *Kammili*, 197 Conn. App. 656, 661, 232 A.3d 102, cert. denied, 335 Conn. 947, 238 A.3d 18 (2020).

[7] To the extent that the defendant now suggests that the court's response to her motion for articulation was incomplete or nonresponsive, we note that she failed to request further articulation or to file a motion for review with this court pursuant to Practice Book § 66-7. "[W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal . . . to this court via the motion for review." (Internal quotation marks omitted.) *Emrich* v. *Emrich*, 127 Conn. App. 691, 706, 15 A.3d 1104 (2011); see, e.g., *Trumbull* v. *Palmer*, 123 Conn. App. 244, 251 n.8, 1 A.3d 1121, cert. denied, 299 Conn. 907, 10 A.3d 526 (2010), and cert. denied, 299 Conn. 907, 10 A.3d 526 (2010).

II

The defendant next claims that the court applied an improper legal standard to her claim for alimony and the division of the marital property. Specifically, she argues that the court failed to consider the plaintiff's duty to support the defendant as part of the dissolution proceeding. We disagree that the court utilized an improper legal standard.

The following additional facts are necessary for the resolution of this claim. In the defendant's proposed financial orders, dated October 19, 2022, she requested that the court grant her motion for retroactive pendente lite alimony, which had been served on the plaintiff on July 8, 2020, in the amount of $9500 per month for a total of $256,500. This payment was to be in the form of a lump sum transfer from the plaintiff's retirement account. She further requested that neither party receive any further alimony payments. The defendant also proposed that the plaintiff pay her $500,000 as a lump sum property distribution. In his proposed financial orders, also dated October 19, 2022, the plaintiff indicated that no alimony should be awarded to either party, although he offered to make a single payment of $10,000 to the defendant and to transfer $42,500 from his retirement account to the defendant.

In its memorandum of decision, the court stated: "In Connecticut, no one gains a right to support or property solely by marrying someone capable of providing support or owning property. . . . General Statutes §§ 46b-81 and 46b-82 create a fact flexible scheme for considering alimony and property distribution that focuses on what the parties contributed to the marriage, the length of the marriage, the parties' needs, their ages, their health, along with their prospects of making money and acquiring property as shaped by their opportunities, their education, and their work experience. Connecticut

is not a community property state. . . . [O]ur courts consider all property and divide it based upon the balancing of equitable factors. Nothing in right or statute requires any use of any percentage division as a starting point or for anything else." (Citation omitted.)

We begin with the standard of review and relevant legal principles. "[W]hether the court applied the correct legal standard is a question of law subject to plenary review." (Internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 200 Conn. App. 63, 73, 239 A.3d 1216, cert. denied, 335 Conn. 970, 240 A.3d 285 (2020); see also *In re Christina C.*, 221 Conn. App. 185, 211, 300 A.3d 1188, cert. denied, 348 Conn. 907, 301 A.3d 1056 (2023). Our Supreme Court has stated that "[o]ur alimony statute does not recognize any absolute right to alimony. . . . By statute, neither husband nor wife acquires any right in the property of the other, except for certain survivorship rights . . . whether such property is acquired before or after the marriage." (Citations omitted.) *Thomas* v. *Thomas*, 159 Conn. 477, 486, 271 A.2d 62 (1970); see also *Valante* v. *Valante*, 180 Conn. 528, 530, 429 A.2d 964 (1980); *Wilson* v. *Di Iulio*, 192 Conn. App. 101, 109, 217 A.3d 3 (2019). The decision of whether to award alimony to a party rests in the discretion of the trial court after consideration of the statutory factors set forth in § 46b-82. See *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 637, 561 A.2d 443 (1989). Stated differently, "§ 46b-82 governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . . In awarding alimony, [t]he court must consider all of these criteria. . . . It need not,

however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor. . . . The trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case." (Internal quotation marks omitted.) *Wilson* v. *Di Iulio*, supra, 109.

We next consider the court's role in distributing the marital property. "In fashioning orders that distribute marital property . . . § 46b-81 (c) directs the court to consider numerous separately listed criteria. . . . [Section] 46b-81 (a) permits the farthest reaches from an equal division as is possible, allowing the court to assign to either the husband or wife all or any part of the estate of the other. On the basis of the plain language of § 46b-81, *there is no presumption in Connecticut that marital property should be divided equally* prior to applying the statutory criteria." (Emphasis in original; internal quotation marks omitted.) *Kammili* v. *Kammili*, 197 Conn. App. 656, 664, 232 A.3d 102, cert. denied, 335 Conn. 947, 238 A.3d 18 (2020); see also *Pencheva-Hasse* v. *Hasse*, 221 Conn. App. 113, 130, 300 A.3d 1175 (2023).

After a thorough review of the court's memorandum of decision, we disagree with the defendant's assertion that the court utilized an improper standard with respect to the issues of alimony and distribution of the marital property. The court properly cited to and applied the relevant statutes in issuing its financial orders regarding alimony and the distribution of property. "Because the court stated that it had considered all the relevant statutory factors, it is presumed to have performed its duty unless the contrary appears from the record." *Walker* v. *Walker*, 222 Conn. App. 192, 196, 304 A.3d 523 (2023). We conclude, therefore, that this claim is without merit.

III

The defendant next claims that the court applied an improper legal standard to her claim for attorney's fees in this dissolution matter. Specifically, she argues that the court's denial of her request for attorney's fees undermined its other financial orders with respect to the issues of alimony and property distribution. The plaintiff counters, inter alia, that the court employed the correct legal standard and its order denying payment of attorney's fees to the defendant did not constitute an abuse of its discretion. We agree with the plaintiff.

The following additional facts are relevant to this issue. The plaintiff testified that he paid the defendant $15,000 for her attorney's fees. He also stated that, in his opinion, the legal fees in this case were excessive, particularly when compared to his 2011 divorce in New York. During cross-examination, he indicated that he had paid between $50,000 and $75,000 to his attorney during this dissolution of marriage action. The defendant testified that she owed $80,555 in legal fees for this dissolution action.

In its memorandum of decision, the court stated: "The parties will be solely responsible for their respective attorney's fees." In its articulation, the court explained that it "saw no reason under the applicable statutes to award [the defendant] attorney's fees or to award them outside the statutes for bad faith. The court found no bad faith in its ruling. It found no contempt against [the plaintiff] meriting an award under General Statutes § 46b-87. The court also rejected an award under General Statutes § 46b-62. Having reviewed all the factors in . . . § 46b-82, the court believed that a fee award to [the defendant] was not appropriate considering its financial orders, nor would those orders be frustrated by a failure to grant it. This was so because the court's financial award was adequate to account for what it

believed would be a reasonable attorney's fee for hand-ing the case reflected on the docket and the evidence before it."

"In dissolution and other family court proceedings, pursuant to § 46b-62 (a), the court may order either [party] to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the equitable criteria set forth in § 46b-82, the ali-mony statute. That statute provides that the court may consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employ-ability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 for the assignment of property. . . .

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be per-mitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . [A]n award of attorney's fees in a marital dissolution case is warranted only when at least one of two circumstances is present: (1) one party does not have ample liquid assets to pay for attorney's fees; or (2) the failure to award attorney's fees will undermine the court's other financial orders." (Citations omitted; internal quotation marks omitted.) *Dolan* v. *Dolan*, 211 Conn. App. 390, 404–405, 272 A.3d 768, cert. denied, 343 Conn. 924, 275 A.3d 626 (2022); see also *Zakko* v. *Kasir*, 209 Conn. App. 619, 625–26, 269 A.3d 220 (2022).

At the outset, we note our agreement with the plaintiff that the proper standard of review for this claim is an abuse of discretion.[8] The court identified and applied the proper legal test for an award of attorney's fees in a dissolution matter. The issue, therefore, is whether the denial of such an award amounted to an abuse of the court's discretion. See *Leonova* v. *Leonov*, 201 Conn. App. 285, 327, 242 A.3d 713 (2020) ("Whether to allow counsel fees, [under § 46b-62 (a)], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.)), cert. denied, 336 Conn. 906, 244 A.3d 146 (2021); *Lynch* v. *Lynch*, 153 Conn. App. 208, 247, 100 A.3d 968 (2014) (same), cert. denied, 315 Conn. 923, 108 A.3d 1124, cert. denied, 577 U.S. 839, 136 S. Ct. 68, 193 L. Ed. 2d 66 (2015).

After reviewing the record before us, including the trial transcript, memorandum of decision, and the articulation, we conclude that the court did not abuse its discretion in declining to award the defendant attorney's fees. As it explained in its articulation, the court considered the factors set forth in § 46b-82 and determined that an award of attorney's fees was not warranted given its other financial orders and that those orders would not be frustrated in the absence of such an award. The court expressly stated that its "*financial award was adequate to account for what it believed would be a reasonable attorney's fee for handling the case reflected on the court's docket and the evidence before it.*" (Emphasis added.) Although she may have incurred significant attorney's fees in this dissolution action, the court was free to determine that the total

---

[8] We disagree, therefore, with the defendant's claim that this claim is subject to plenary review.

claimed by the defendant was not reasonable.[9] "Courts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described. . . . [C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. . . . The court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues. . . . While the decision as to the liability for payment of such fees can be made in the absence of any evidence of the cost of the work performed . . . the dollar amount of such an award must be determined to be reasonable after an appropriate evidentiary showing." (Internal quotation marks omitted.) *M. S.* v. *P. S.*, 203 Conn. App. 377, 403, 248 A.3d 778, cert. denied, 336 Conn. 952, 251 A.3d 992 (2021).

Additionally, we note that the trial court, in addition to the statutory factors, has inherent equitable powers and may consider other factors appropriate for a just and fair resolution with respect to a claim for attorney's fees in a marital dissolution case. See *Clougherty* v. *Clougherty*, 162 Conn. App. 857, 876, 133 A.3d 886, cert. denied, 320 Conn. 932, 134 A.3d 621 (2016), and cert. denied, 320 Conn. 932, 136 A.3d 642 (2016). Finally, we note that, "[u]nder the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) Id. We cannot conclude that such abuse occurred in the present case and, therefore,

---

[9] During closing argument, the plaintiff's counsel stated: "This should have been a simple matter to resolve. It's a short marriage. However, simply resolving this matter is not what's happened. Indeed, the defendant has incurred more than $100,000 in counsel fees, some of which are not even related to this case. She has incurred counsel fees without abandon and has not even made an attempt at paying them."

we are not persuaded by the defendant's claim regarding failure to award attorney's fees.

IV

The defendant next claims that the court improperly took judicial notice[10] of facts regarding her employment prospects and future earning capacity. Specifically, she argues that the court improperly took judicial notice of the labor market for educators and failed to assign her a specific earning capacity.[11] Further, she contends that, as a result of these improprieties, the court's financial orders are flawed. We conclude that, contrary to the defendant's claim, the court did not take judicial notice of facts regarding her employment prospects and future earnings and, therefore, this claim is without merit.

[10] "The doctrine of judicial notice excuses the party having the burden of establishing a fact from introducing formal proof of the fact. Judicial notice takes the place of proof." (Internal quotation marks omitted.) *Scalora* v. *Scalora*, 189 Conn. App. 703, 713, 209 A.3d 1 (2019). Section 2-1 (c) of the Connecticut Code of Evidence provides: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) within the knowledge of people generally in the ordinary course of human experience, or (2) generally accepted as true and capable of ready and unquestionable demonstration." See also *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 331 n.24, 87 A.3d 546 (2014).

[11] "[O]ur case law is clear that a party's earning capacity is the amount that he or she realistically can be expected to earn. . . . It is not the amount the party previously has earned or currently may be earning. . . . In marital dissolution proceedings, under appropriate circumstances the trial court may base financial awards on the earning capacity rather than the actual earned income of the parties . . . when . . . there is specific evidence of the [party's] previous earnings. . . . It is particularly appropriate to base a financial award on earning capacity where there is evidence that the [party] has voluntarily quit or avoided obtaining employment in [the party's] field. . . . Earning capacity, in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as [her] vocational skills, employability, age and health." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Mitchell* v. *Bogonos*, 218 Conn. App. 59, 74, 290 A.3d 825 (2023).

In its memorandum of decision, the court found that the defendant earned "very little" and that due to the length of the marriage, there "was [not] time enough for the parties' lives to intertwine enough to merit seismic shifts in the parties' finances." It further found that, as a result of the marriage, the defendant "improved her financial situation and her children's lifestyle[s]." Her nonmonetary contributions did not enable the plaintiff's financial success and, the court explained that she would need to support herself following the dissolution judgment. It then stated: "And she has the means. She is fifty-four years old, *but she has a teaching certificate in mathematics and special education during a dramatic labor shortage in one of the best labor markets in the world.* She will have to work to support herself, and fortunately most of her children are adults and the last soon will be." (Emphasis added.) The court's property distribution and decision to not award her alimony were made on the basis of her contributions to the household, her age, her employment prospects,[12] and her time away from gainful employment.

As we previously have noted in this opinion, the interpretation of a court's memorandum of decision presents a question of law subject to plenary review. See *In re Jacquelyn W.*, 169 Conn. App. 233, 241, 150 A.3d 692 (2016). We iterate that, "[a]s a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment." (Internal quotation marks omitted.) Id. On the basis of our review, we conclude that the court did not

---

[12] The defendant testified: "In 2017, I was still trying to grow my embroidery business that I had started in 2012. But when I realized that wasn't financially viable, I pivoted and started tutoring and working with children who have learning differences. And I additionally just took a second job as the director of operations at a marking company." She further testified that, in March, 2022, she was offered a full-time teaching position with an annual salary of $60,000.

take judicial notice of the employment opportunities for an educator, but rather made a passing reference in support of its determination, based on the relevant statutory factors and evidence presented, that the defendant had the ability to support herself following the dissolution judgment and financial orders. We emphasize that the court found that the duration of the marriage, the absence of an intertwinement of their assets, and the lack of the defendant's contribution to the plaintiff's success did not warrant "seismic shifts in the parties' finances." See, e.g., *Mitchell* v. *Bogonos*, 218 Conn. App. 59, 73, 290 A.3d 825 (2023) (applying statutory factors, court concluded that marriage was of short duration and defendant did not contribute to acquisition, preservation, or appreciation of any of plaintiff's assets). Similarly, the court was not required to make a finding of the defendant's specific earning capacity because it had determined that her financial situation was not altered substantially by the marriage, and her postdissolution employment opportunities, based on her age and education, coupled with the financial orders, would provide sufficient support. For these reasons, this claim must fail.

V

The defendant's final claim is that the court improperly discredited her testimony that the plaintiff's consumption of alcohol caused the marriage to end. Specifically, she argues that the court improperly rejected her testimony regarding the plaintiff's alcohol abuse and its effects on the parties' marriage due to the lack of corroborating evidence.[13] We are not persuaded.

___

[13] The defendant also argues that the court's trial management order limiting each side to sixty minutes to present his or her case prevented her from presenting additional evidence of the plaintiff's excessive alcohol consumption. On August 22, 2022, the court issued the following order: "The parties will begin a remote trial in this matter on [October 24, 2022] at 2 p.m.. The plaintiff will have sixty minutes of time and the defendant will have sixty minutes. The clock is running whenever a party or a party's witness is speaking, including cross-examination, objections, arguments, etc. A party objecting to the court's time allotment must file a written

The defendant testified that, prior to the marriage, the plaintiff refrained from drinking alcohol as a result of the negative effects he had experienced and those he had witnessed impacting other members of his family. The defendant further testified that she suspected that the plaintiff resumed consuming alcohol in January, 2019, and that he admitted to doing so in September, 2019. She stated that, during this time period, the plaintiff became "more irritable," and would "go into a rage and yell and scream . . . ." During the time period

objection on the docket."

As noted previously in this opinion, the abuse of discretion standard applies to trial management issues. "A party adversely affected by a [trial] court's case management decision thus bears a formidable burden in seeking reversal. . . . A trial court has the authority to manage cases before it as is necessary. . . . Deference is afforded to the trial court in making case management decisions because it is in a much better position to determine the effect that a particular procedure will have on both parties. . . . The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . The ability of trial judges to manage cases is essential to judicial economy and justice." (Internal quotation marks omitted.) *Barnes* v. *Connecticut Podiatry Group, P.C.*, 195 Conn. App. 212, 228, 224 A.3d 916 (2020); see also *Cinotti* v. *Divers*, 151 Conn. App. 297, 304, 94 A.3d 1212, cert. denied, 314 Conn. 924, 100 A.3d 855 (2014).

Neither party filed a written objection to the court's time allotment. Furthermore, during the direct examination of the defendant, her counsel stated: "I think I'm going to finish in the allotted time, but I'm hoping that if I need a little extra time for redirect the court might consider it." The court responded that it would evaluate this request on the basis of the nature of the questions and whether they were material. At the conclusion of the defendant's testimony, the court asked: "Is there anything that you claim is so material that should be allowed to inquire, assuming you're out of time . . . ?" The defendant's counsel responded in the negative. Finally, after the plaintiff's rebuttal testimony, the court inquired if the defendant's counsel needed additional time because of "any question that you need to ask in order to receive a fair hearing," and she again replied in the negative.

"It is well known that this court is not bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. Practice Book § 60-5. The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Dessa, LLC* v. *Riddle*, 223 Conn. App. 457, 464, 308 A.3d 1051 (2024); see also *Ochoa* v. *Behling*, 221 Conn. App. 45, 50–51, 299 A.3d 1275 (2023).

The defendant specifically represented to the trial court that she did not need additional time to present her case, and, therefore, she cannot now

from September, 2019, until April, 2020, she claimed that the plaintiff's frequency and amount of alcohol consumption increased to the point of daily use, which caused her to move out of the marital home. She further described his behavior as "erratic, volatile, controlling, mean, unpredictable, unstable, [and] scary" and as negatively impacting both her and her children. Ultimately, she was "100 percent sure that the marriage broke down due to [the plaintiff's] drinking and his change in behavior."

During his rebuttal testimony, the plaintiff denied excessively consuming alcohol, and stated that he had not been arrested for driving a motor vehicle under the influence of alcohol or that alcohol consumption affected his work performance. He further stated that the defendant did not express concern regarding his use of alcohol during the marriage.

In its memorandum of decision, the court stated: "It's worth noting that the court was unimpressed with [the defendant's] claim that drinking drove the marriage onto the rocks. The evidence, uncorroborated by witnesses, arrest records, treatment, or trouble at work, didn't have enough convincing force for the court to give [the defendant] money for the troubles she claimed it brought her. It was more convenient than convincing." It is clear that the court rejected the defendant's testimony regarding the plaintiff's increased alcohol use and its effects on the marriage as not credible.

"[I]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . As such, the trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge

claim that the court's management order prevented her from doing so. Accordingly, we decline to review this argument.

their credibility." (Internal quotation marks omitted.) *Hebrand* v. *Hebrand*, 216 Conn. App. 210, 223, 284 A.3d 702 (2022); see also *L. K.* v. *K. K.*, 226 Conn. App. 279, 312, 318 A.3d 243 (2024) (where trial court is arbiter of credibility, this court does not disturb findings made on basis of credibility of witness, as credibility determination is unassailable on appeal). It is the privilege of the trial court to adopt whatever testimony it reasonably believes to be credible, and it is not the function of this court to retry the facts or pass on the credibility of a witness. See *M.B.* v. *S.A.*, 194 Conn. App. 727, 735, 222 A.3d 551 (2019); see also *Emerick* v. *Emerick*, 170 Conn. App. 368, 377, 154 A.3d 1069, cert. denied, 327 Conn. 922, 171 A.3d 60 (2017).

Contrary to the defendant's appellate argument, the court did not discredit her testimony regarding the plaintiff's purported alcohol abuse due to the lack of additional corroborating evidence. Moreover, the court, as the arbiter of credibility and finder of fact, did not credit the defendant's testimony as to this issue. Rather, the court merely pointed out that she had not presented any additional corroborating evidence. We emphasize that "[i]t is the sole province of the trial court to weigh and interpret the evidence before it and to pass on the credibility of the witnesses. . . . It has the advantage of viewing and assessing the demeanor, attitude and credibility of the witnesses and is therefore better equipped than we to assess the circumstances surrounding the dissolution action." (Emphasis omitted; internal quotation marks omitted.) *Zahringer* v. *Zahringer*, 124 Conn. App. 672, 679–80, 6 A.3d 141 (2010). For these reasons, we reject the defendant's claim that the court improperly discredited her claim that the plaintiff's consumption of alcohol caused the dissolution of the marriage.

The judgment is affirmed.

In this opinion the other judges concurred.